# In the United States Court of Federal Claims

No. 21-1271

Filed: May 17, 2021

NOT FOR PUBLICATION

---

**ROBERT NEVILLE,**

               *Plaintiff,*

**v.**

**UNITED STATES,**

               *Defendant.*

---

## MEMORANDUM OPINION AND ORDER

*HERTLING*, **Judge**

The plaintiff, Robert Neville, acting *pro se*, filed this action on April 19, 2021. Concurrently with his complaint, the plaintiff filed a motion for leave to proceed *in forma pauperis*. The documents supporting that motion were incomplete, and on April 23, 2021, the plaintiff was ordered to file by May 25, 2021, a completed application for leave to proceed *in forma pauperis*. On May 11, 2021, the plaintiff filed a renewed motion for leave to proceed *in forma pauperis* supported by a completed application form. The plaintiff's renewed motion satisfies the requirements to proceed *in forma pauperis* pursuant to 28 U.S.C. §§ 1914, 1915. Accordingly, the plaintiff's renewed motion to proceed *in forma pauperis* is **GRANTED**.

The plaintiff's complaint seeks $5.8 million in damages from the United States "for the negligent hiring, training, supervision and tortious and illegal behavior" of United States District Judge J. Randal Hall of the Southern District of Georgia. The basis for the complaint arises from a series of lawsuits the plaintiff brought against his half-sister, Ms. Elizabeth McCaghren, in the Southern District of Georgia ("district court"). The history of these suits is outlined in the district court's order dismissing the plaintiff's third suit against Ms. McCaghren. *Neville v. McCaghren*, No. CV 617-075, 2018 WL 2024622 (S.D. Ga. May 1, 2018), *denying reconsideration*, 2019 WL 97836 (Jan. 3, 2019). The plaintiff apparently sued Ms. McCaghren for claims related to the administration of their mother's estate. The plaintiff filed three cases in the district court. Each case involved the same facts; all three were dismissed. Due to the plaintiff's filing of numerous post-judgment motions, the district court determined that the plaintiff had a history of frivolous filings and harassment of opposing counsel. The district court not only dismissed the last case brought by the plaintiff against Ms. McCaghren but also imposed monetary sanctions and filing restrictions on the plaintiff. *Neville v. McCaghren*, 2019 WL 97836, at *6; *see also Neville v. McCaghren*, No. CV 617-075, 2019 WL 1085197 (S.D. Ga. Mar. 7, 2019) (awarding Ms. McCaghren attorney's fees and costs incurred in connection with her Rule 11 motion for sanctions).

According to his complaint, the plaintiff filed three separate suits against Ms. McCaghren, including one in 2013, 2015, and 2017.[1] The complaint does not expressly allege that these cases were all filed in the Southern District of Georgia, where Judge Hall serves as the Chief Judge, but it is evident that Judge Hall presided over the plaintiff's cases.

The plaintiff alleges in his complaint facts related to his claim against his half-sister and that, in connection with that claim, Judge Hall:

1. Never had a single hearing on motions

2. Refused to undergo a neurological exam although he is an alcoholic and mentally impaired

3. Ignored [the plaintiff]'s many requests for hearings many times requested hearings [sic]

4. Entertained the most outrageous obstructions to the course of justice.

5. Entertained [defense counsel]'s preposterous argument that [Ms.] McCaghren had "no significant ties" to the state of Georgia

6. In fact [Ms. McCaghren] actually committed dimes [sic] in the State of Georgia.

7. She also holds real property on [sic] the State of Georgia

8. This real property was obtained by means of the Fraud alleged in the lawsuits, Neville v McCaghren (2013)(2015)(2017)

9. She is also subject to the "Long Arm Statute" of the State of Georgia . . .

10. Yet [Judge] Randal Hall somehow decided that his court had *no personal jurisdiction over* [*Ms.*] *McCaghren!*

11. This absurd ruling, only possible to be made by a severely [mentally] handicapped person with a personal bias against [the plaintiff] and other *pro se* plaintiffs on top of his

---

[1] The Court presumes that the facts alleged in the complaint are true for the purposes of considering whether the Court has jurisdiction over the plaintiff's claims. This Order recites the facts as alleged by the plaintiff.

tolerance for the multitude of delaying tactics thrown up by [defendant's counsel], makes a mockery of justice.

(Pl.'s Compl. at 1-2 (emphasis in original).)[2]

Based on these grievances reflected in his complaint, the plaintiff alleges that Judge Hall acted with gross negligence, and that Judge Hall's "bias and prejudice disqualifies [him] and his maladministration of this case merits monetary relief." (*Id*. at 3 (capitalization omitted).)

Specifically, the plaintiff alleges that because of the district court's dismissal of his suits against Ms. McCaghren, he "has been deprived of his Property Interest of bringing a lawsuit. The right to sue is recognized as a property right by all Common Law jurisdictions." (*Id*. at 2.) The plaintiff further alleges that Judge Hall "acted in these cases as an ADVOCATE rather than as an impartial arbiter of the law." (*Id*. (capitalization in original).)

Before proceeding to briefing on the merits and an evaluation of the plaintiff's claims, the Court must first address whether it has jurisdiction to hear the case. Jurisdiction is a threshold matter that the court must resolve before it address the merits of a case. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94-95 (1998). The Court has a responsibility to ensure that it has jurisdiction over any claims asserted. *See, e.g.*, *St. Bernard Parish Gov't v. United States*, 916 F.3d 987, 992-93 (Fed. Cir. 2019). The Court may dismiss a complaint on its own initiative if "the pleadings sufficiently evince a basis for that action." *Anaheim Gardens v. United States*, 444 F.3d 1309, 1315 (Fed. Cir. 2006).

The Tucker Act, 28 U.S.C. § 1491(a), defines this court's jurisdiction:

> The United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort.

28 U.S.C. § 1491(a)(1).

The Supreme Court has interpreted the Tucker Act to waive sovereign immunity to allow jurisdiction in the Court of Federal Claims if a claim is (1) founded on an express or implied contract with the United States; (2) seeking a refund of a payment previously made to the United States; or (3) based on federal constitutional, statutory, or regulatory law mandating compensation for damages sustained, unless arising from a tort. *See United States v. Navajo*

---

[2] The complaint is not paginated; the page numbers referenced here and elsewhere in this Order reflect the pagination generated automatically by the court's electronic docketing system.

*Nation*, 556 U.S. 287, 289-90 (2009). "Not every claim invoking the Constitution, a federal statute, or a regulation is cognizable under the Tucker Act. The claim must be one for money damages against the United States . . . ." *United States v. Mitchell*, 463 U.S. 206, 216 (1983); *see also United States v. Sherwood*, 312 U.S. 584, 588 (1941) (holding that the United States is the only defendant over which this court may hear claims). To invoke the limited jurisdiction of the Court of Federal Claims, a plaintiff must rely on a statute or regulation that is money-mandating, meaning the source of alleged liability "'can fairly be interpreted as mandating compensation by the Federal Government for the damage sustained.'" *United States v. Testan*, 424 U.S. 392, 400 (1976) (quoting *Eastport S. S. Corp. v. United States*, 372 F.2d 1002, 1009 (Ct. Cl. 1967)).

The plaintiff is proceeding *pro se*. As a result, his pleadings are entitled to a more liberal construction than the Court would give to pleadings prepared by a lawyer. *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972). Giving a *pro se* litigant's pleadings a liberal interpretation and construction does not divest the *pro se* plaintiff of the responsibility of having to demonstrate that he has satisfied the jurisdictional requirements that limit the types of claims the Court of Federal Claims may entertain. *See Kelley v. Sec'y, U.S. Dep't of Labor*, 812 F.2d 1378, 1380 (Fed. Cir. 1987). In construing a *pro se* litigant's pleadings liberally, the court does not become an advocate for that litigant. Rather, the court ensures that the *pro se* litigant's pleadings are construed in a manner that gives the litigant every opportunity to make out a claim for relief.

The starting point for determining whether this Court has jurisdiction is the plaintiff's complaint. *See Holley v. United States*, 124 F.3d 1462, 1465 (Fed. Cir. 1997). The Court interprets that complaint liberally.

The plaintiff himself acknowledges that "suing the United States for hiring and retaining and supervising (or failing to) a federal judge is an unprecedented use of statutory authority of this court." (Pl.'s Compl. at 4.) Nonetheless, the plaintiff asserts that he has "no other suitable remedy." (*Id*.) He claims that he "has a Right to Sue and this right has been completely negated by the fact that the United States has seated and retained and failed to supervise [Judge] Hall." (*Id*.)

The complaint does not identify a statute or regulation that mandates the payment of money by the United States for an adverse judicial decision like the dismissal of the plaintiff's cases in the district court. The Federal Circuit has held that "the Court of Federal Claims has no jurisdiction to review the merits of a decision rendered by a federal district court." *Shinnecock Indian Nation v. United States*, 782 F.3d 1345, 1352 (Fed. Cir. 2015); *see also Joshua v. United States*, 17 F.3d 378, 380 (Fed. Cir. 1994) ("[T]he Court of Federal Claims does not have jurisdiction to review the decisions of district courts or the clerks of district courts relating to proceedings before those courts."). The plaintiff's claim is beyond this court's jurisdiction.

In effect, the plaintiff has dressed up an effort to seek review of the decisions of the Southern District of Georgia in this court under the guise of a claim for a taking. The plaintiff's claim that the dismissal of his district court claims constitutes a taking is analogous to the claim

4

made and rejected in *Allustiarte v. United States*, 256 F.3d 1349 (Fed. Cir. 2001). In *Allustiarte*, the plaintiffs alleged that improper decisions by bankruptcy trustees that were approved by federal bankruptcy judges constituted takings under the Fifth Amendment to the Constitution. *Id.* at 1350-51. The Federal Circuit rejected the argument that adverse judicial rulings can constitute a taking. *Id.* at 1352-53. *Allustiarte* forecloses the plaintiff's claim here.

Alternatively, were the Court to construe the plaintiff's complaint liberally to advance a claim for a violation of due process, such a claim too is beyond the limited jurisdiction of the Court of Federal Claims. *Smith v. United States*, 709 F.3d 1114, 1116 (Fed. Cir. 2013) (noting that the Court of Federal Claims does not have jurisdiction over due process challenges because "[t]he law is well settled that the Due Process clauses of both the Fifth and Fourteenth Amendments do not mandate the payment of money and thus do not provide a cause of action under the Tucker Act").

To overturn the dismissal of his suit in the Southern District of Georgia, federal law provides the plaintiff with the appropriate avenue to seek a reversal. That remedy is an appeal to the U.S. Court of Appeals for the Eleventh Circuit, which has jurisdiction to hear appeals from the Southern District of Georgia. An appeal to the Court of Appeals pursuant to 28 U.S.C. § 1291 is the means that was available to the plaintiff to seek review of the dismissal of his district court suit. A new action in this court seeking such review is beyond the jurisdiction of the Court of Federal Claims.

Finally, the Court liberally construes the plaintiff's complaint to include a challenge to not only the dismissal itself but to the comportment of Judge Hall, *i.e.*, a claim of judicial misconduct. This claim, too, must fail for want of jurisdiction. Judicial misconduct claims must be filed in the court of appeals for the circuit in which the alleged judicial misconduct occurred. 28 U.S.C. § 351; *see also Merriman v. United States*, 128 Fed. Cl. 599, 602 (dismissing a case alleging judicial misconduct for lack of jurisdiction); *O'Connor v. United States*, No. 09-116C, 2009 WL 2612490, at *2 (Fed. Cl. Aug. 7, 2009) (noting that "allegations of wrongdoing by the judges of . . . other courts . . . are complaints of judicial misconduct, which are not properly brought in [the Court of Federal Claims]. Judicial misconduct claims must be brought in the court of appeals for the circuit in which the alleged judicial misconduct occurred"). The Court does not have jurisdiction over claims of judicial misconduct.

It is one thing to extend the law to establish a new basis for liability, as the plaintiff acknowledges he is requesting in his complaint. It is another to seek to do so in the face of binding precedent foreclosing such an effort. The plaintiff's attempt fails because binding precedent bars his attempt to secure relief in this court for the decisions of the district court.

Because no possible construction of the plaintiff's complaint would permit the Court to exercise jurisdiction over the claims raised by the plaintiff, that complaint must be **DISMISSED** pursuant to Rule 12(b)(1) and Rule 12(h)(3) of the Rules of the Court of Federal Claims. The Clerk is **DIRECTED** to enter judgment dismissing the complaint. No costs are awarded.

It is so **ORDERED**.

s/ Richard A. Hertling
**Richard A. Hertling**
**Judge**